Good afternoon and welcome to our Richard Chambers Courthouse here in Pasadena. This is the time set for the case of hearing the case of United States of America v. $1,106,755 in United States currency and Oak Porcelli and Gina Pinnock. If the parties are ready to proceed, you may begin. May it please the court, Alyssa Barnardiani for appellant Oak Porcelli. I'd like to reserve five minutes for rebuttal. The government accuses Mr. Porcelli of being a drug dealer but rather than actually criminally prosecute him, it seeks only his money. A serious problem for the government in this forfeiture action is that Mr. Porcelli challenges the underlying search and seizure as unconstitutional. But the district court refused to resolve the pending suppression motion and instead dismissed the case as a discovery sanction based on a misinterpretation of Rule G6. That decision not only fails to deter unconstitutional police practices but affirmatively rewards and incentivizes them, laying the roadmap for operationalizing textbook unconstitutional seizures to profit to the tune of millions of dollars. This court should reverse and could do so on any of three grounds. Sequence, scope, and standing. On the sequencing issue, motions to suppress in a civil forfeiture action must be decided before a court dismisses the case as a discovery sanction. Counsel, do you think that should be a categorical rule or do you think that should be the rule only if the district court is going to consider and the government is arguing an aspect of what was seized as support for its sanction or support for suggesting that the interrogatory answers were not sufficient? So I think it should be a default rule and I think the rule it needs to be a little more broadly than Your Honor was suggesting because it's not just whether the government is directly invoking the suppressed evidence as support for the sanction motion but it's whether the suppressed evidence is going to affect the admissible evidence at summary judgment and at trial which is then going to inform the relevance of the interrogatories and the responses. In this case, the panel majority's decision illustrates that point and crystallizes it because the only piece of information that they think Mr. Porcelli should have provided in the interrogatory responses that he didn't provide was his annual income. But if Mr. Porcelli's suppression motion were granted, the amount of money seized from his vehicle would be suppressed. It wouldn't be admissible at summary judgment or at trial. Within the time we have, what I struggle with here is the standard of review on the district court when it's abuse of discretion and if people, you know, I agree that standings are pretty low bar, but if someone, you know, but if we just allow people to say anything, hey, it's my money and that's it and nothing more, why did the district court abuse its discretion to say, hey, we need a little more money, we need a little more information before I decide you have standing? So I think there's a lot packed in there and one is that standing is assessed differently at different stages of the proceedings. There's no dispute that Mr. Porcelli has standing at the pleading stage. He's made an unequivocal claim of ownership in his claim that establishes pleading stage standing. There's, it's also important that under, back up and see that there's multiple different categories of forfeiture claims. So Mr. Porcelli is in a particular lane. He is alleging an ownership interest in property that was directly taken from him, but that's not the only category of claim. There are people who assert possessory interests. That's a different lane and there are people who... Also, can I have you go back to Judge Wardlaw's question because I think I understood your answer, but I don't understand the rationale behind that answer. So if the district court doesn't consider any evidence that could potentially be suppressed in considering the motion to strike or the sufficiency of the interrogatories, then why does the district court need to hear the motion to suppress before ruling on the standing question? So I think the point is that it doesn't depend on what the court is considering or not considering. It depends on what's actually informing the relevance. And so here I think part of the problem is that the court wasn't thinking about the relevance issues that were expressly teed up below. So here the amount of money seized for Mr. Porcelli is not admissible at trial or at summary judgment if the suppression motion is granted. And that is going to dictate the relevant scope of discovery that can appropriately be sought from him. Well, not in every instance. So let me turn to the facts of this case. So the first response, Porcelli said, I own all of the defendant's currency, seized from the vehicle I rented, and consequently I have a right to possess it and otherwise exercise dominion and control over it. If the district court says that's not enough and grants a motion to compel further response, that's fine, isn't it? There's no consideration of any circumstances of the stop or any potential evidence to be suppressed. This is a purely discretionary call at that stage. So I think that that question gets at the separate question about the scope of G-6 and when you can issue a G-6 interrogatory. And that gets at, I think, the heart of what is standing. And standing is an Article III consideration. It's about ensuring the existence of a judicially cognizable case or controversy. And when Mr. Porcelli says, I am asserting a claim of ownership in property that was taken from me, that is the inherent nature. It's a concrete and particularized injury. He's alleging that the government took his property. So that's all anyone has to say. It's mine. So no, that's not all everyone has to say. And that's because there's different lanes of forfeiture cases. And so Mr. Porcelli is in the ownership of property seized from him lane. And so in that lane, what you have to show under this court's substantive standing precedence is unequivocal claim of ownership that was seized directly from you. That's a concrete injury. There is a tangible dispute between Mr. Porcelli and the government because they literally took property from him. Would that make Rule G-6 redundant? No, again, because there are different categories of cases. And so Rule G-6 is doing important work in the other two lanes. And one of those is the assertion of possessory interest. So you think G-6 only applies to possessory interest and not to ownership? No, it also applies in cases where you are alleging an ownership interest in property that was not physically seized from your possession. So like money found at the park, for example, a bag of cash. The rules are going to be different, in a sense, for that case than the case where the money is found in someone's car. Exactly. And so there are... What's your authority for that? So that's this court's standing precedence, 133,000. This court's decision walks through the different lanes of standing cases and the different substantive standing principles that apply in all of them. And so in the cash found in the park lane, what you have to allege at the pleading stage is just an unequivocal claim of ownership. But at summary judgment, you have to come forward on standing to show some kind of particularized connection to the property. You have to show some evidence of ownership. Why can't the government ask broader questions than just a standing question and say, for example, we want to know more about the possessory interest, but it wouldn't go toward standing. It would just go perhaps to trial issues, something that survives summary judgment. But the government has a right to try to seek information about that. The government can absolutely do that with the general discovery devices and the federal rules of civil procedure. They are not displaced. They are available. So when you're talking about evaluating the case at summary judgment, there's going to be discovery for that purpose, and it's going to be done with depositions and subpoenas and requests for production and general interrogatories under the federal rules. If we follow or adopt your rule, would we need to overrule Lewis? No, Your Honor. Our position doesn't require the court to overrule the holdings, I don't think, of any of this court's precedents. I think Lewis was the claimant in $133,000. So we think that that case has some loose language describing the scope of Rule G6. For example, it describes it as broadly authorizing discovery. We don't think that's consistent with the text of the rule, which is, quote, limited to the relationship to property. When you started and you articulated these three grounds that you think this court could rule in your favor, you're now talking about scope, which, if I understand you correctly, what you're stating is that we can limit the applicability of G6 in the context of a claimant seeking ownership interest to not be applicable in the first instance because it's clear their standing, and so G6 would be irrelevant. Right. So that's the standing point. The standing point is, insofar as G6 is about discoverability and information that goes to standing, it's not relevant and not appropriate where standing is not in dispute, and that's our lane of case. It's not all cases. It's our lane of cases. And the reason for that is because the seizure of property from someone alleging an ownership interest is a judicially cognizable dispute. That's a concrete, particularized case or controversy. Whether Mr. Porcelli is right or wrong about who owns the property, whether it's forfeitable, those are all merits questions. They're about entitlement to relief, and they're not standing questions. So can I go back to the Chief's question about whether we would have to overrule Lewis? You were talking about one piece of the language, but what about footnote 5? This is the 133 case. Yes. So I don't think that footnote is a holding because what the— I think it's a dicta. What the claimant was alleging, the argument textually that he was advancing about Rule G6 there, was that it only authorized discovery interrogatories about ownership and your identity. And what this court held correctly is that that can't be what Rule G6 requires because that's just—Rule 5 already requires that. So that was the actual argument that the court rejected on the scope of Rule G6. I mean, but the court said that Interrogatory 2 was proper, and Interrogatory 2 is broader than I think what you're saying would have to be answered in a case where there's a claim of ownership and possession, which I thought was true in Lewis. So when the court said that in footnote 5, it was just making that statement in relationship to the particular argument that the claimant was making in that case, and so the argument was different here. So I don't think you actually have to overrule that. I think that observation is dicta. But, you know, to the extent Your Honors disagree and think that that case is setting a particular line in terms of the scope of Rule G6, then I think you would and should overrule it. So in these circumstances, other than, I guess, the first interrogatory, which just asked for personal identification information about him, do you think any of the other interrogatories directed to Mr. Portelli were appropriate? So no, and there's two reasons for that. One is the standing point. Standing is not reasonably in dispute. But if you go to the scope point, I mean, what all of the government's interrogatories in this case are doing is they're going at the source of Mr. Portelli's money in his car, and that's the forfeitability question that the government has the burden of proving. That's not a standing question, and you can see that with the hypothetical of somebody owning an illegal gambling business. You know, if they make profits from that business, they own that money. They're the owner of the money, but it's forfeitable. And that's why the forfeitability analysis and where this money comes from is just not speaking to standing. But that's what all of these questions are directed at. But does the amount of cash have anything to do with the standing? So it doesn't for, I think, a couple of reasons, and one is— And if it doesn't, why do we have to do the motion to suppress before tell the court that you have to do it first? So there is a little bit of path dependency here. I think if you narrow Rule G-6 and you narrow the scope of standing, then I think the universe of cases, like in our case, it wouldn't be relevant at all because you wouldn't be adjudicating a motion to strike, and so then you wouldn't have to address the motion to suppress. But there are— I'm sorry. Go ahead and finish your question, and then I'll ask my next question. But in other lanes of cases, and in particular, I think this is going to do work with respect to people who claim an ownership interest in property that was seized not from their person, so the park cash example. And in that circumstance, it is appropriate to ask some basic questions about the relationship to the property. And I don't know that it's appropriate to ask the source of the information for the reasons I was saying before because that's a forfeitability question. But I do think that if the amount of money is relevant, that might affect, in some sense, what's proportional, what's relevant, how much information this person is going to have to put forward at summary judgment to establish standing. And so in that lane of case where you have— and this is the lane that the courts are concerned about, that people are just going to read forfeiture notices online and then come out of the woodwork and claim property that actually they have no connection to. So that you do have to come forward at summary judgment with additional evidence of ownership. That's a case where Rule G6 interrogatories are appropriate. And our view of the scope of Rule G6 in that category of case is that the claimant should be required to assert or allege or describe the facts that it intends to prove about its relationship that would be sufficient. That's not how I know that on a previous occasion, your client didn't challenge the forfeiture of a whole bunch of money and plastic wrappings that had to do with the FedEx case. When did that—was that in front of the court, too? When did that come to everyone's knowledge? So that allegation is in the forfeiture complaint. So it's in the complaint. It's before the court. And that goes to forfeitability. It doesn't really have anything to do with ownership, and it doesn't have anything to do with standing. And so it's just not something that's relevant at this stage of the proceedings. Let me ask you a related question to that line of questioning. To what extent, if at all, can the government test the credibility of the assertion for standing purposes? So, for example, let's say it's a car stop. They find a bunch of money. We don't care how much it is. And the claimant says, this is my money, and I earned it through five years of employment, the past five years of employment. And the government knows that this is an unemployed individual. Can the government then seek the answers to be supplemented with, well, who were you employed with? How much were you paid? Questions of that nature to basically test the credibility of the possessory interest for standing purposes. Those issues are general discovery issues, and they are absolutely appropriate to be resolved and explored, but they're going to be resolved and explored at the summary judgment phase with the general discovery devices. Not under G6. Not under G6. This court held in 999,000 that conflicting evidence, prior disclaimers of ownership, none of that is relevant to standing at the pleading stage. That's all a question for summary judgment. So this is going to get litigated at summary judgment. And what I think the panel majority and the district court don't really appreciate is that G6 is not covering the waterfront at summary judgment. It is an extremely narrow device. Interrogatories are not very helpful for actually testing the claimant's assertions. That's why you have access to a deposition where you're actually going to test what the claimant is saying if you get all the way to summary judgment. So can I ask, though, if you could ask the same questions under the normal rules instead of these G rules, is it just a labeling problem? I mean, if we... Why couldn't we construe what happened here as, OK, they got past the motion-to-dismiss stage and now he wasn't responding to discovery and so there was a discovery sanction? Why can't it be just relabeled? What's the practical difference between what happened here and what I just said? I think the Fourth Amendment overlay is a really important component of the practical difference. So what the government is trying to do here is front-load as much as it can in G6 to make onerous interrogatories so that people won't answer them because it's not an appropriate discovery device at that stage. They want to put as much as they can in the front stage of the case so that claimants don't answer the questions. And then if you flip... So they lose early as opposed to lose later. No, and so then if you flip the burden of the sequencing here and you address the suppression motion early in the way the district court did here, then cases where the government should lose because they have no admissible evidence, they have no constitutionally sound evidence supporting a forfeiture, end up reaping a benefit to local and federal law enforcement agencies to the tune of a million dollars, as is the case here. OK, so let's just hypothetically back to this reframing, relabeling question. So if the court here, which I actually am not sure the court... The court talked about the facts of the stop, but the analysis was more just that you didn't respond to this discovery. So let's just have a hypothetical where we say we're past the motion to dismiss. They serve the same questions, but under the regular discovery rules. He doesn't really respond. The court gives him a few warnings and says you're going to get a discovery sanction without talking about the amount of money. You just haven't been responding enough to the discovery request, so I'm going to kick you out as a discovery sanction. Could that happen and just be relabeled? So at general discovery, Rule 37 governs discovery sanctions, and the Rule 37 sanctions, the advisory notes and Rule G make clear, are sort of less harsh than the G6 remedy, which is supposed to be uniquely powerful and strong because of the importance of proving standing in particular. But you could have a case terminating with warnings and everything else, which there were actually some warnings here. I mean, you could have a case terminating sanction for not responding to discovery. Sure, I think that's exactly right, and that's part of... Mr. Porcelli made that argument to the district court. The government below were the people who were opposing discovery here, and Mr. Porcelli's consistent point has been it's not appropriate to put this in G6. There's a sequencing problem. There's a scope of G6 problem. There's a standing problem. These all kind of converged in this case to create... But if it happens in general discovery, though, we have a line of cases suggesting then there's kind of a five-factor test for terminating sanctions, and so there's kind of a separate high bar there without which we would find an abuse of discretion, right? You have to look at... You actually have to look beyond just the conduct in discovery and say, well, was there prejudice to the requesting party, you know, and so forth. But that didn't come up here. That would be an additional overlay in general discovery. Exactly right, and again, I think that's why the Rule 37 sanctions, it's harder for the government to get sanctions. And it also, the interrogatory device, when you look at the interrogatories here at 68 to 79, they're burdensome and they're things that are just strange to require an interrogatory about. I mean, what the government sort of wants is bank records and they want transaction-by-transaction data. And if you were in general discovery, you could respond to the interrogatory and say, you know, I'm not going to list this in this interrogatory. Please see, like, these Bates numbers of our document production. That's what you do in general discovery. And so that's the kind of thing you could do. You could say, I'm not going to, you know, it's burdensome, it's not proportionate for me to actually answer this question by listing this all out. I'm going to give you the relevant document. And that's not something that is... Under the hypothetical that Judge Friedland presented and assuming, you know, that there had been an early, this would have happened in an earlier motion to dismiss stage and then there was discovery under the normal discovery rules as opposed to G6, your position is still that there needs to be a resolution of the motion to suppress before a discovery sanction is entered. Yes, absolutely. So my understanding of the hypothetical was that there wasn't a suppression motion pending, but absolutely the suppression needs to be decided before summary judgment merits, obviously, because it's going to affect the universe of admissible evidence at summary judgment. And it also... Even if we were to assume that regular discovery rules were used to solicit this information and not G6, you still need this court to address the sequencing issue. Yes, the sequencing question is really critical and I think it's, again, I think that the confluence of errors here create a perfect storm of creating a really terrible incentive, but a lot of this derives from the suppression motion and the subordination of Mr. Porcelli's Fourth Amendment rights to the discovery sanction. And again, you know, the suppression motion is analytically antecedent to the motion to strike because what evidence is appropriately requested for Mr. Porcelli is going to depend on the resolution of the motion. And again, the income example that the majority of the panel used proves the point because that information is totally irrelevant. It can't be admitted at summary judgment or at trial if the suppression motion is granted. And so it's wholly irrelevant. And it would be error for the court to issue a terminating sanction and kick Mr. Porcelli out of court for failing to provide a relevant information. And there's no way to carve all that out and just focus on the motion to strike? So there is. So I think the three issues, sequencing, scope, standing, the court could address any one of them. So the scope issue would also resolve. If you just found that he complied with Rule G6, that removes the case. In your view, standing equals ownership or ownership equals standing? Standing for ownership? Standing is distinct from ownership or the existence of a property interest. The existence of a property interest is an inherent aspect of all property claims. It's not specific to this kind of civil forfeiture action. Claimants, plaintiffs asserting property rights have to prove the property right. That's a merits issue. Standing is separate. It's about if your claim is true, are you injured? And so you think about Lujan. You think about organizational standing. Even if you're right on the merits, even if you prove your case, you're just not injured because the merits have nothing to do with you. That's not what this is about. This is if you are right that the government took your property, you're claiming ownership, this is a judicially cognizable dispute in this lane of cases. And so in the sort of ownership case where the property was seized from a public park or from a UPS warehouse or something like that, there is more of a complete overlap. There's no particularization to you. The property wasn't taken directly from you in the same concrete way. So there's more of an overlap there. On the sequencing point, so 8A, any party with Fourth Amendment standing can move to suppress. Do you take that? Let me know. Is that just an intervener? There's some disconnection there, right? In other words, the motion to suppress is, under the rule, separate from any question of standing. Does that support your sequencing point that not just grammatically but logically 8A and 8B are kind of independent and one follows the other? Right, so they are independent. Fourth Amendment standing is different than Article III standing. So Fourth Amendment standing is about your relationship, your privacy in the searched object. So here it's about Mr. Porcelli's relationship to the rental car. It's not about his relationship to the money. And so, you know, for example, if you have money and you've lent it to a friend and it's in their house and then their house is unlawfully searched, you don't have standing to contest the search of their house. That's the Fourth Amendment overlay. It has nothing to do with your ownership interest or your property interest. So why should the merits of that suppression motion turn on whether the claimant has standing, right? They're just different questions. There's Article III standing, Fourth Amendment standing. Fourth Amendment standing isn't in dispute here. You know, everyone agrees Article III standing is the irreducible constitutional minimum to have a dispute adjudicated. Everyone agrees it's satisfied at the pleading stage. But just to put a finer point, the moment that Mr. Porcelli asserted that he had an ownership interest in the property that was seized from him, that was sufficient to establish standing and the court needed to have gone to the motion to suppress issue next. Yes. So on the sequencing point, we agree there needs to be pleading stage Article III standing to consider the motion. That's just Lujan. But once you have made an unequivocal claim of ownership, that satisfies the pleading stage requirement and then you need to adjudicate the suppression motion. Is there any case, the Seventh Circuit case, 239,000, I recall I think the district court had addressed a Fourth Amendment legality of the search issue before it went on to deal with issues about discovery, you know, responses and summary judgment on standing. Is there a case like this that has resolved a claim where there was a pending Fourth Amendment issue that was not resolved? So I'm not sure that I'm familiar with a particular case that involves these specific sequencing facts. I mean, the parties don't identify them in their briefs, and I think we haven't otherwise found them. But I think the principle is twofold. One is about, you know, the supremacy of the Fourth Amendment. One is, again, the analytical necessity of evaluating this first. Like, you just can't decide that Mr. Porcelli's annual income is relevant and required unless you know whether or not the amount of money is going to be seized. And so that's, I think, the analytical independence is doing, the analytical dependence is doing the work on that point. If it went in the right sequence, according to you, and he won the suppression motion, would he have to respond to any discovery? So if he won the suppression motion, I mean, usually what happens at that stage is you either move to dismiss the forfeiture complaint because it's, you know, founded on inadmissible and suppressed evidence, or you do a summary judgment motion on that point, or, frankly, the government usually just drops the case and dismisses the claim. So you don't have to submit yourself to discovery in that case because the entire forfeiture action is the fruit of the poisonous tree at that point, unless the government has independent evidence, which it doesn't have here. In seeking that independent evidence, can the government propound additional discovery? So I think the scope of the exclusionary rule here is not really briefed, and I think it's not really well developed in the law. I don't know that it could. I don't know that the government could leverage suppressed evidence to unlawfully initiate this action and then leverage that to take discovery. I think that would all be tainted by the search unless there was sort of pre-existing independent evidence. I think that's how the fruit of the poisonous tree doctrine would work out here. They can't, like, use discovery to, like, remove the taint of the proceeding that was wrongfully initiated. But that's not briefed, and I don't know that it's really developed in the law in this context. Do you want to reserve the balance of your time? Yes, please.  May it please the Court, Mina Chang for the Government. This is a case about the appellant's calculated refusal to engage in aspects of litigation when it was not helpful to him, and the district court was within its discretion to ultimately strike his claim when the appellant made clear that he would not comply with these orders. This Court, as well as other circuits, have recognized that there's a higher risk of false claims in civil forfeiture proceedings, and consistent with that understanding, Congress authorized the government to investigate claims and claimant's assertions through these G6 interrogatories, and they required claimants as well to respond to them. And if claimants do not respond, then the district court has a discretion to strike these claims. Well, is there a scope? You know, Rule G6 allows for interrogatories limited to the claimant's identity in relationship to the defendant's property. What are the limits to the scope of this inquiry in your view? Yes, Your Honor. And why wasn't this beyond that? So, the interrogatories that the government is allowed to issue in this case are narrowly tailored to the question of whether, regarding the claimant's identity and his relationship to the property that was seized. So, counsel, if I could jump in. Question four. Interrogatory four. State whether you've ever been convicted of any criminal offense, and if so, provide information for each offense. How is that relevant to standing in this case? In this event, it would go to Mr. Portelli's identity and whether he has a relationship to the property which he initially claimed was not his, it was somebody else's, or that he was carrying it. Whether he's been convicted of jaywalking in the past would shine light on that? It would be relevant in terms of establishing who this person is and whether, for example, his character or his history has indicated anything that leads to the government identifying him with the property that he was found with. It sounds like you're evaluating credibility. Less so credibility and more so a potential item of identity, but to that end, in this case, Mr. Portelli's argument for why he should not be answering these interrogatories were not about the language of these interrogatories so much as he said that his assertion was that whether he had standing at pleadings would be sufficient to answer every single interrogatory, and that would be sufficient. If you were to determine that Mr. Portelli's claim of ownership based on the fact that the money was seized from him and his car was sufficient to establish standings and thereby limiting the scope, I think as your friend on the other side suggested, of G6 applicability in the first instance, if we were to hold as much, would we need to overrule any of our precedent in concluding that G6 is limited in that way? I apologize, Your Honor. Would you be able to rephrase? Sure. So your friend on the other side is asking this court to expressly limit the applicability of G6 in cases where there is, when we're in this lane of a claim that is made based on an ownership interest from money that was obtained directly from the person, thereby standing is not reasonably in dispute. The standing is established based on the facts and circumstances of the way that this money was possessed or obtained. So in that way, if we were to then say G6 couldn't be used as a vehicle for obtaining standing discovery because it's so clear it's not reasonably in dispute that this individual who's making the claim has standing, would that require us to overrule any of our prior cases? Yes, Your Honor, because it is insufficient to simply state that you have standing at the pleadings stage. The interrogatories... That's not exactly the facts of this case. It's not simply that he's asserting that he has standing or I own the money. There are other facts that establish that the money belongs to him, including the fact that it was seized directly from him and his vehicle. Yes, but there's a reasonable dispute as to a standing. The government has also asserted that the government believes that perhaps Mr. Portelli could prove at the pleadings stage but that anything beyond that... Well, if there's a dispute about standing then isn't that assessing credibility? He says it's mine. The government is not obligated to accept on face what the defendant is saying or what the claimant is saying. So you're saying you don't believe him. So it is a credibility issue. Less so credibility and more so that the interrogatories are a tool that enables the government to separately validate or to separately identify whether his statements are what he say them to be. That seems like credibility. That is credibility, what you are saying. Listen to yourself. Is there any information that you sought via Rule G6 interrogatories that you could not have sought through the usual discovery process? No, there is an overlap and I believe that the reason why these interrogatories are particularly salient is that the government is able to test this early on in litigation. So, for example, the district court determined that in these instances where standing or there is reasonable dispute about standing and they would have to evaluate it at a later stage. It would be more judicially economical. But if he already had standing and already established a standing, why do you need more information at this point in the proceedings? The government did not agree that Mr. Portelli had standing and that was up to reasonable dispute. And so to the extent that the government was entitled to then seek discovery in order to ensure that they were able to rely on this information to that extent the interrogatories would be. So do you not tell me what you think is the appropriate standard for evaluating standing? Because many circuit courts have said to borrow your friend on the other side's argument if you are in this particular lane of claiming ownership over property that has been seized by law enforcement against them in particular that is enough to establish standing in different circuit courts including some of our prior cases. Are you suggesting a different standard? Are you making an argument that something more needs to be established to establish standing? Well standing is evaluated at different stages of the litigation and so these interrogatories would enable the government to seek discovery for example at the tribal stage. But you can go from one to the other and I think what people are saying is why didn't what he said establish standing and then move to the discovery and then you get to ask other questions and then move to whether the government can prove by the proponents of the evidence that it's ill gotten goods. Why do you get to conflate all that in the first part? It's easy to throw things out right out the gate. I understand it's easy but you got called out on you're not doing it in the right order. You're conflating things. Well I think the first part specific to this case even if we did take for example the motion for suppression first and evaluated that, that actually doesn't end this case because the rule G6 actually requires that the government is able to issue these interrogatories and is not required to answer a motion to dismiss. Is the amount of money, does it matter in the first part of standing? Was that considered in the first part of standing? It can be but in this case that's not what the district court ultimately determined was problematic about his responses to the interrogatories. Alright so if that wasn't considered then you could do the motion to suppress later. Yes your honor. Is that your argument? I don't want to make it for you but if it was considered if that was part of the reason of whether or not he had standing, shouldn't you do the motion to suppress first to decide if that's going to be suppressed or not because if it's suppressed then you can't bring up the amount of money, right? I think this case is distinguishable in so far as there was no determination about standing or the standing was not. Does the amount of money have anything to do with standing here? In this case the government would argue that what was important for the district court and ultimately in granting the motion to strike was that he was evasive and indistinct so it was less about the inconsistencies between what the government I guess I'm getting frustrated because I don't understand why you can't answer that question. Was the amount of money relevant to the standing inquiry in this case? Not in this case your honor. So under the ordinary discovery rules we've said that there's five factors that the district court has to consider before imposing a case terminating discovery sanction and the court also has to find that there was willfulness or fault or bad faith. Do you think that those principles apply to G6 interrogatories? To some degree but in the event that for example the district court provides different opportunities and you have a recalcitrant litigant for example then the district court can weigh certain factors. Well okay but the district court here didn't or at least I certainly know I mean you can say he was recalcitrant and maybe he was but the district court didn't make a finding of willfulness or bad faith that there's no discussion of how you were prejudiced or any of the other factors is there? Your honor I think this goes to why Congress imposed or permitted the government to file a motion to strike and then the court would then have the discretion to evaluate whether it would be an appropriate measure and I think it goes There's no question but that the court has the discretion to do that but the question is what factors, how is that discretion supposed to be guided and we've said and I understood you to agree a moment ago that the district court in this context is supposed to do the analysis under the five factors but it doesn't seem like it did so why isn't that just on the face of the order an abuse of discretion? In this case because the rule authorizes the district court to do so and in particular because issues regarding civil forfeiture are particularly rife with unmeritorious claims that this is a process of the district court being able to expeditiously call out unmeritorious claims and so in that regard perhaps it requires the district court less consideration in terms of walking through the factors but again it appears that the district court ultimately decided that in this case it was less about in this case it was not particularly about standing or this rule but the ruling was specifically because the litigant was being evasive and wasn't responding Can I ask about that? He served discovery requests on the government and the motion to suppress also went to the issue of the legality of the search and the government was never required to answer any of those questions or produce any information or records or any type of discovery related to that. If this case is as you're suggesting boiling down to recalcitrance should the district court have considered that there is recalcitrance on both sides that there was never any response by the government in terms of any of this information as to the conduct of the search itself? No your honor because the district court's decision to stay discovery was not based off of the government gets priority but rather because the district court identified that standing was going to be at issue regardless of what stage and so because it was a threshold dispositive issue the district court ultimately decided that it would handle the issue of standing and interrogatories in that regard first Can I ask you to clarify are you actually contesting that at the motion to dismiss stage it's not enough to say I'm the owner and it was taken from my possession? No your honor in this case that would satisfy the pleading standard And so he had standing at the pleading stage? Yes your honor So I'm not sure I understand what you mean when you keep saying standing was contested Because by the phase that we reach discovery we are past the pleading stage and at that point it's the mechanism through which the government is now testing whether that whether these allegations are true You weren't in discovery This was under G6 Am I incorrect on that? This happened at G6 before discovery started Yes your honor, maybe I'm conflating the terms but rather that these limited interrogatories are a process for which the government can collect evidence and then also pursue But you conceded standing So how, if you say that he had standing at this stage I'm not sure I understand I apologize your honor, maybe I didn't mean that he had standing, the government did not concede that he had He just said that he had standing at the pleading stage at this point because he said the money was his and it was directly taken from him That was sufficient to satisfy the pleading standard but then the next stage in which the parties were facing would be either for the government to move to strike or to convert into a motion for separate judgment So the next stage would be discovery and then the government should have to use the general discovery rules, not the specific testing standing discovery rules The special interrogatories were devised particularly because in civil forfeiture there would be You're beyond that because you're at the pleading stage you conceded he had standing under 9th circuit law and so you're at the next stage now and so G6 doesn't even apply because that's that rule is for testing standing and identity, but you conceded at that point and you already had it so next stage, general discovery, right? Not quite, I believe that there's an interim period because for example the claimant can't file a motion to dismiss until the government is able to issue these interrogatories and then the government then has time to respond to for example a motion to dismiss But there wasn't a motion to dismiss pending, I mean the ball might have been in the claimant's court but you've said several times that standing was disputed but it seems that the remedy there would be the government's motion for summary judgment which I think you'd concede you'd lose because there is a dispute as to standing at the summary judgment stage so why should the government be able to get that relief in this different way? I don't believe that it's the government I don't believe that the government conceded that the claimant would have survived a motion for summary judgment, but rather that this is a tool to quickly call out in the beginning whether he would be able to ultimately be successful and also to litigate standing issues on the front But G6 can only be used as a tool to evaluate standing early not the merits of the claim Yes your honor and so this would be a process for the government to then take this as a lead to then pursue additional investigation as to whether You're conceding that standing was not reasonably in dispute but G6 was used as a mechanism to obtain additional information or in your words to get a lead on information that would help the government in its ultimate claim on the merits No your honor, this is the language of G6 states that that the government is able to issue these at any point after the claim has been filed and before the close of the summary But for a purpose, I think you're missing sort of a critical part of G6 which is not that it can just be filed at any point early, but for the purpose of establishing standing But when standing is not reasonably in dispute as I think you've acknowledged now a number of times because of the circumstances of this case and the assertion which under our case law is sufficient to establish standing that he owned the money then it can't be used in the way that the government is using it Because standing has to be, there are different levels of proof in terms of standing Well I think because you keep backing up what comes out is every time there's a push back on it you keep backing up, you just want to end this early and there's a process to end it and if the first part on G6 is to determine standing, that doesn't really that doesn't mean you don't get to do discovery but it doesn't mean G6 can be used as discovery. Would you concede that? There's G6, there's discovery, there's summary judgment. Of course, everyone would love to go in court and win on the first day and I'm not saying Mr. Porcelli's going to win okay, but when you say there is standing in the pleading, then you move to discovery but then you're saying, oh no, no we get to do discovery under G6 so you're not making me feel relaxed that you understand that there's separate processes, that you just want to do it all at the beginning and win the first day you're there It's more so because of the nature of frivolous claims or unmeritorious claims that G6 could be used, not necessarily but you don't doubt the money was in his car, the car that he was driving, and he says it's my money, so that isn't really that there's not really any dispute about that, right? Yes, Your Honor and that goes to his level of pleading, what he needs to show at the pleading stage and I understand Your Honor's argument that this should that potentially, that this is only a tool that could apply at the pleading stage, but that would obviate why the language would Go ahead if you want to finish that, but I wanted to just ask, even if we assume your view how much more did he need to state in his interrogatory to satisfy the government? Not necessarily the government, but what the district court's language makes clear is that it wasn't, the issue was that he was being evasive and indistinct so it was less about the volume So what did he, what else, I'm just curious, what would, in your view, have satisfied the inquiry the interrogatory? Your Honor, for example he claims that he has full ownership over the seized money, and then with response to interrogatory number six, for example he's referring to vague time frames, rough estimates without providing disaggregation in terms of where this money is coming from he's stating that this money is based off of projects for work that he did but he's not identifying the different projects That's why he ultimately loses That's why when you have the burden of the preponderance of the evidence, that's how you show that that's not how he earned the money It's not how he shows he has standing. That's why he loses later Perhaps, but in this situation I believe that the district court ultimately determined that it was his unresponsiveness to the interrogatories rather than his lack of standing So if there was a spreadsheet you're saying saying I worked on this movie for Disney and this movie for Amazon, then all of a sudden the case changes? That's what this case turns on? I think that in this very specific case it was less so that, but because he intentionally crafted his responses to the interrogatories in a way that essentially made it possible for the government to then follow up He thumbed his nose at the district court But he says right here, he lists his IMDB page, which lists every movie project he's worked on. That's pretty extensive Couldn't you have then gone and looked at every single movie he worked on and followed up there? Why isn't that enough? It would be impossible for the government to reverse engineer. For example, he links his IMDB page, but he doesn't list what projects he worked on or whether even the source of his money that he received from working on the list, for example of IMDB, links to the seized money. Couldn't you take a deposition in the discovery stage? Yes, Your Honor, but that would obviate the need for G6 interrogatories in the first place. The purpose of the G6 interrogatories is to establish standing Now, to establish standing you have to go back and go back to every single movie you worked on and list exactly what you did and exactly where the movie was filmed and exactly what you got paid to establish standing? I believe that it's more instructive to see, for example, the central district of California's case, United States versus $295,726 and there it was the problem was that the claimant had provided incomplete and invasive answers and, for example, he listed Citibank or Interact But that discovery sanction only comes into play if G6 is an appropriate tool to be using in the first instance. I mean, your argument is circular in the sense that you keep pointing to the discovery violation for failure to adequately respond to the G6 interrogatories but if that mechanism is not proper to use in the first instance because you're not actually testing standing, then I don't understand how we can keep looking at the failure to respond to an interrogatory that wasn't properly promulgated If all that was required it would essentially obviate the point of G6 to ask anything beyond, did you own the money? Did you own the money or was it yours? What you're proposing is the government can always say, you know, this is not adequate enough and you can end every single case that way because it seems, you know, why wouldn't the government have an incentive to say, no, you know, that's an insufficient answer and because we're doing this through G6, we move to strike and end it. At what point does something become sufficiently detailed enough in order to survive for standing purposes, getting to a later stage of the proceedings? I believe that in this case, it would be the government's ability to reasonably independently verify but ultimately this, regardless of what the government believes satisfies the interrogatory response, it's ultimately the district court that makes that determination and the district court would be in the best situation in this case to make that determination of whether it was satisfied. But not if we conclude that the district court is abusing its discretion because it's shifting the burden onto Mr. Porcelli to prove up his case and say, I'm the legitimate owner of this property as opposed to the government's burden of proving by a preponderance of the evidence that this has been rightfully forfeited. And so I think that's, you know, and if it's all washed through a discovery response process, it seems that the government would have carte blanche to always call something inadequate. What is the limiting principle you would apply to make sure that abuse doesn't happen? In the first instance, the district court is the best, is in the best position but also because these interrogatories are limited specifically to the claimant's relationship to the property. So for example, Okay, I admit looking at this, he doesn't, I have probably $40 in my wallet. Okay, I don't have a million plus in wrapped paper in my car. Okay, very suspicious. But on the other hand, I do have, I could show standing, it's my wallet. Then it moves to the next stage of discovery and you can ask me, where did I get the money that I put in my wallet? And then the government can, and then if I show okay, this is where I got it, then you can prove that you can put in the evidence that another time he had a whole bunch of money in plastic with FedEx and all of that and at the end of it. But just because it's all suspicious at the pleading stage and we don't want judges to look at it and say, oh, that's suspicious and I'm just going to jump ahead and knock you out of court right here. That seems like what you're asking. You want the money but without the process. And you probably can win. Doesn't that go against CAFRA reform? It seems like, as Judge Sanchez, Judge Callahan pointed out, the burden should be on the government to establish, do you agree it is on the government ultimately to establish by preponderance of the evidence that this was tied to drug, some sort of unlawful drug activity? And so here by doing it this way it's impossible, even though there may have been an unlawful search, that this case is thrown out at this stage because of this additional sort of information that I'm having trouble figuring out where it's authorized or what basis you're asking for that additional information, especially at this stage of the proceedings and the case is even out before there's a motion to dismiss. Because parties have to show at different stages what level of the appropriate level of standing and if they can't show that, even if for example a defendant won a motion to suppress purely on the basis of an unauthorized search, if he doesn't demonstrate that he has standing at that stage or subsequently... On that, I guess to take you to the sequencing place, 8A doesn't require 8A says if you've got and if you've got Fourth Amendment standing you can move to suppress. 8B requires standing to contest the forfeiture, so you're worried about frivolous cases, but any party can intervene and move to suppress, not just the claimant. Why doesn't the motion to suppress necessarily proceed any further inquiry into the claimant's standing? Because the district court still has to determine whether somebody has Article 3 standing. Right, but that's been determined I think we've all conceded the claimant had Article 3 standing at the pleading stage. And after that anyone who has Fourth Amendment standing, and Fourth Amendment standing isn't contested here, so we have Article 3 standing uncontested for the pleading stage. Article Fourth Amendment standing uncontested. Why doesn't he get his suppression motion decided before turning back to his standing? In this case the courts had ultimately decided that because if they had to address standing at any later stage, if they were to address it earlier on, it would be then the... But if he doesn't move to... There was no pending motion to dismiss the forfeiture action at this point, right? So that next stage is summary judgment after normal discovery. 8A, right, or G8A provides for a motion to suppress early on regardless of the claimant's standing to contest forfeiture. They're just separate provisions. So why do you have to satisfy 8B or standing at summary judgment or do anything else for him to bring the 8A motion and get that decided? Do you have a case if you lose the motion to suppress? I was not on the district court level, and so I don't know the particular facts in this case. And moreover, the district court actually didn't evaluate. But my understanding would be that if the... Depending on the district court's ultimate conclusion, if the evidence were suppressed, the government can still theoretically bring a case if it... Well, theoretically, but I mean, I've seen the... I'm assuming you've read what the facts are in the case just like I've read to come here today, right? Yes, Your Honor. You read the officer's... What the officer said, right? Yes, Your Honor. So you don't know whether you have a... If you lose on the motion to suppress, your answer is theoretically there could be a case, but you don't know. You're not prepared to say whether there would be. Is that your answer? Yes, Your Honor. In terms of how the district court would ultimately rule on that and what pieces of evidence the district court would have found to be suppressed, what use in that regard, the government may still very well have a case. And ultimately, because of that, if the government was still... Does the government care whether evidence is lawfully obtained or not? Of course, Your Honor. So you don't really want to avoid a challenge on a Fourth Amendment. If you think you're right, then you win, right? If you're wrong, then you lose. But you seem to want to avoid that by doing everything at the G6 level. Because ultimately, in these cases where... This is just another tool in which both the district court and the government can help streamline the process of screening for meritorious claims. And I understand Your Honor's point in terms of we should be mindful about the government overreaching or trying to capitalize on illegal seizures. But again, in this case, in this specific case, the district court actually had made absolutely no determination as to the merits of the motion for summary or the suppression motion. Thank you. Thank you very much. Just a few points. On sequence, it's not about what the district court considered. It's about what the interrogatories are asking for because the analysis is whether the information the government is seeking and the information Mr. Porcelli provided is relevant. That depends on what evidence is admissible. So can I ask, G6 actually does say that these interrogatories can be used anytime before discovery is closed. So there's been a lot of questions like, we have G6 and then we shift to discovery, but what do we do with this language that says until discovery is closed? It seems like it overlaps them. Yes, so they can issue it anytime, but the purpose that G6 is serving is it's focusing discovery. It's giving the government some notice about what is it that it has to do general discovery about, and that's important because forfeiture proceedings are different from ordinary civil litigation. There's no rule 8 notice pleading requirement for the claim. The claim is at ER 257. It's one sentence. It doesn't say what the claimant intends to prove at summary judgment with respect to their standing. So that's the interrogatory mechanism. It says, what is it that you are going to try to prove about standing at summary judgment? Depending on what lane you're in, that's going to depend. Would you concede that we can get past the standing without doing the motion to suppress? So you have to have pleading stage standing to file the motion to suppress, but you don't have to have summary judgment stage standing to brief the motion to suppress. In fact, you can't because you can't get to summary judgment until you litigate. Am I understanding you, though, that you want the motion to suppress to be held before any standing or any discovery occurs? Not before any standing or any discovery. You have to have pleading stage standing to be in federal court. We don't dispute that. So we can delay the answer? I mean, it can come after the answer. Yeah, so here it can come after the answer, but the motion to suppress was filed the day that this action was filed. This action is unlawfully initiated from the get-go. It's been pending for six years now, and this court should reverse and it should hold that the court has to resolve the pending suppression motion before a discovery dismissal, and it should hold that a G6 interrogatory is the vehicle to request the allegations that will be proved about standing at summary judgment, and it should hold that standing is not reasonably in dispute in this lane where someone's alleging an ownership interest in property directly taken from them. Can I ask you a question? Is this case distinguishable from the Eighth Circuit case on the $254,000 or the Seventh Circuit case of United States v. Funds in the amount of $239,000? So I think that those cases are correctly decided and informative. I confess I don't remember every fact about them to say whether they're exactly on all fours, but we think that the analysis there is helpful to us on the distinction between standing and the merits, the role of the Fourth Amendment and all of this, and the appropriate way to think about it. And one last point, you know, on the scope, I urge the Court, this is an easy case. Look at ER 74. It is not evasive. It is not indistinct. It is extremely detailed, and it provided way more information than Mr. Porcelli should have been provided. All of the information he provided is about forfeitability. It's not about standing, and that was inappropriate from the get-go, and it's certainly error to require even more than that. This Court should reverse. Thank you. Ms. Barnard-Yanni, we appreciate your oral argument presentation today. Ms. Chang, thank you very much. The case of United States of America versus $1,106,775 in United States currency, Oak Porcelli and Pinoch is now submitted, and we are adjourned. Thank you.
judges: MURGUIA, WARDLAW, CALLAHAN, NGUYEN, OWENS, FRIEDLAND, MILLER, BRESS, SANCHEZ, DESAI, JOHNSTONE